GORDON SILVER
GERALD M. GORDON, ESQ.
Nevada Bar No. 229
E-mail: ggordon@gordonsilver.com
*Admitted Pro Hac Vice*
TERESA M. PILATOWICZ, ESQ.
Arizona Bar No. 024447
E-mail: tpilatowicz@gordonsilver.com
LOREN A. MORRIS, ESQ.
Arizona Bar No. 028941
E-mail: lmorris@gordonsilver.com
One East Washington, Suite 400
Phoenix, Arizona 85004
Telephone (602) 256-0400
Facsimile (602) 256-0345
Attorneys for Reorganized Debtor

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SWIFT AIR, L.L.C.,<br><br>Debtor. | Case No.: 2:12-bk-14362-DPC<br>Chapter 11 |

## STIPULATED ORDER APPROVING SETTLEMENT AGREEMENT BETWEEN SWIFT AIR, LLC AND RED APPLE AVIATION, INC.

Swift Air, LLC ("Reorganized Debtor"), by and through its counsel, the law firm of Gordon Silver, and Red Apple Aviation, Inc. ("Red Apple," and together with Reorganized Debtor, the "Parties"), by and through its counsel, Snell & Wilmer, LLP filed that certain *Stipulation Regarding Settlement Agreement Between Swift Air, LLC and Red Apple Aviation, Inc.* (the "Stipulation").[1]

The Court, having read and considered the Stipulation and good cause appearing therefor:

/ / /

/ / /

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Stipulation.

Gordon Silver
Attorneys At Law
One East Washington
Suite 400
Phoenix, AZ 85004
(602) 256-0400

104423-001/2187325_2.doc

Case 2:12-bk-14362-DPC    Doc 847    Filed 02/26/14    Entered 02/27/14 08:48:43    Desc
Main Document    Page 1 of 8

**IT IS HEREBY ORDERED** that the Agreement between the Parties and attached hereto as **Exhibit "A"** is approved.

**IT IS HEREBY FURTHER ORDERED** that Red Apple has an allowed non-priority unsecured claim as provided for in the Agreement.

**DATED AND SIGNED ABOVE**

Gordon Silver
Attorneys At Law
One East Washington
Suite 400
Phoenix, AZ 85004
(602) 256-0400

104423-001/2187325_2.doc

2

EXHIBIT "A"

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Agreement") is made and entered into by the Reorganized Debtor Swift Air, LLC ("Swift") and Red Apple Aviation, Inc. ("Red Apple"). Swift and Red Apple may be referred to herein collectively as the "Parties" and individually as a "Party."

## I.
## RECITALS

**A.  The Swift Bankruptcy Case.**

1. On June 27, 2012 (the "Petition Date"), Debtor Swift Air, L.L.C. ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, thereby commencing bankruptcy case number 1:12-bk-14362-DPC in the United States Bankruptcy Court for the District of Arizona (the "Bankruptcy Case").

2. On October 1, 2013, the Bankruptcy Court entered its *Order Confirming Third Amended Plan of Reorganization* [ECF No. 662], thereby confirming *Debtor's Third Amended Plan of Reorganization* [ECF No. 620] (as amended, the "Plan").

3. In accordance with the terms of the Plan, on October 18, 2013 the Plan became effective. Swift was deemed the successor of Debtor's estate with all of the rights and powers provided for under the Plan.

4. The Plan created a Creditor Trust[1] with an appointed Litigation Trustee to pursue certain Retained Causes of Action set forth in the Plan. Specifically, Section 5.6 of the Plan provides the following:

> **Establishment of the Creditor Trust.** On the Effective Date, the Litigation Trustee shall execute the Creditor Trust Agreement and accept the Retained Causes of Action to be transferred to the Creditor Trust, and the Creditor Trust will be deemed to be created and effective without any further action of the Debtor, Reorganized Debtor, or any employees, officers, directors, managers or members of the Debtor or Reorganized Debtor, or any employees, officers, directors, managers or members of the Debtor or Reorganized Debtors, as applicable.

5. The Retained Causes of Action generally include pre-petition Avoidance Actions and do not include Disputed Claims litigation.

6. Under the Plan, except for the Retained Causes of Action, any and all claims and/or causes of action against any third party, including Red Apple, were retained by Swift.

---

[1] Capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the Plan.



B. **Red Apple's Asserted Claim and the Objection Thereto.**

6. On or about October 30, 2009, Red Apple and Debtor entered into an *Operating and Management Agreement* (the "Management Agreement") whereby Debtor agreed to operate Red Apple's Boeing 727-200 aircraft (the "Aircraft"). The Management Agreement was subsequently amended on April 28, 2011 and March 27, 2012.

7. Red Apple contends that Debtor wrongfully and prematurely terminated the Management Agreement in January 2012 and, as a result, Debtor is liable to Red Apple for $3,242,250.00 based, in part, on Debtor's failure to meet its guaranteed minimum annual flight hours and failure to complete required maintenance on the Aircraft. Red Apple further contends that Debtor is liable to Red Apple for any accrued interest, costs, and attorneys' fees.

8. On or about July 18, 2013, Red Apple filed a proof of claim ("Claim No. 5") asserting a claim in an amount of $3,242,250.00 in addition to any accrued interest, costs, and attorneys' fees.

9. Swift contends that Debtor did not wrongfully and prematurely terminate the Management Agreement but rather, that Red Apple is liable to Debtor for unpaid fees incurred as a result of operations of the Aircraft.

10. On August 30, 2013, Debtor filed an objection to the allowance of Claim No. 5 based on a review of Debtor's books and records which Debtor alleged failed to show any amounts due and owing to Red Apple but rather, showed amounts owed from Red Apple to Debtor.

11. Claim No. 5 and the objection thereto are not Retained Cause of Action, as that term is defined in the Plan, and may be settled by Swift. This Agreement, once approved by the Bankruptcy Court, is not subject to contest by the Creditor Trust.

12. The Parties each have concluded that litigation of this matter and potential appeal would be expensive and protracted, and that it would be desirable that their dispute be fully and finally settled in the manner and upon the terms and conditions set forth herein in order to avoid the expense of litigation and the uncertainty regarding certain disputed defenses.

## II.
## TERMS AND CONDITIONS

NOW, THEREFORE, in consideration of the covenants, promises, and releases set forth herein, and in full settlement of all such claims, the Parties hereby agree as follows:

A. As used herein, "Effective Date" means the first business day that is fourteen (14) days after entry of the stipulated order by the Bankruptcy Court in the Bankruptcy Case approving the Agreement (the "Approval Order"). The form of the Approval Order must be mutually acceptable to both Swift and Red Apple.

B. On the Effective Date, in full satisfaction of Claim No. 5, Red Apple shall have an allowed non-priority unsecured claim in the amount of $3,000,000.00 (the "Allowed Claim").

C. The Allowed Claim shall constitute full satisfaction of Claim No. 5 and Red Apple shall not be entitled to any other or additional distribution from Debtor, Debtor's estate, or Swift.

D.    Except for the Allowed Claim, upon the Effective Date, Red Apple fully and completely releases, waives, and forever discharges Debtor, Debtor's estate, Swift and all of their employees, agents, attorneys, representatives, insurers, successors, and assigns from any and all claims, causes of action, demands, liabilities, obligations, rights, injuries, expenses, damages, and losses, whether known or unknown, which Red Apple now owns or holds or at any time heretofore owned or held. Notwithstanding the foregoing, in the event that the Creditor Trust asserts a Retained Cause of Action against Red Apple, nothing contained herein prevents Red Apple from asserting any claim or defense in that litigation.

E.    Upon the Effective Date, Debtor, Debtor's estate, and Swift fully and completely releases, waives, and forever discharges Red Apple and all of its employees, agents, attorneys, representatives, insurers, successors, and assigns from any and all claims, causes of action, demands, liabilities, obligations, rights, injuries, expenses, damages, and losses, whether known or unknown, contingent or non-contingent, patent or latent, which Swift now owns or holds or at any time heretofore owned or held. The foregoing release excludes only the Retained Causes of Action.

F.    If within sixty (60) days of the Effective Date, the Creditor Trust delivers to Red Apple a complete and absolute release of any and all claims held by the Creditor Trust, including the Retained Causes of Action, against Red Apple and all of its employees, agents, attorneys, representatives, insurers, successors, and assigns in a form acceptable to Red Apple, in its sole and absolute discretion, Red Apple shall reduce the Allowed Claim to $1,500,000.00 (the "<u>Final Red Apple Allowed Claim</u>"). If the Creditor Trust does not deliver to Red Apple a complete and absolute release of any and all claims held by the Creditor Trust, including the Retained Causes of Action, against Red Apple and all of its employees, agents, attorneys, representatives, insurers, successors, and assigns in a form acceptable to Red Apple, in its sole and absolute discretion within sixty (60) days of the Effective Date, Red Apple's obligation under this section to reduce its Allowed Claim to the Final Red Apple Allowed Claim shall automatically and without further notice to any party terminate.

G.    From the Effective Date through sixty (60) days after the Effective Date, Red Apple shall be paid its *pro rata* share of distributions from the GUC Distribution Pool as if the amount of its claim totals the Final Red Apple Allowed Claim.

   1.    If within sixty (60) days of the Effective Date, the Creditor Trust delivers the release as defined to in Section II(F), Red Apple shall continue to be paid its *pro rata* share of distributions from the GUC Distribution Pool on the Final Red Apple Allowed Claim.

   2.    If the Creditor Trust does not deliver the release as defined in Section II(F) within sixty (60) days of the Effective Date, Red Apple shall be paid its *pro rata* share of distributions from the GUC Distribution Pool on the Allowed Claim, including "catch-up" payments for the difference between the *pro rata* share of distributions from the GUC Distribution Pool on the Allowed Claim and the *pro rata* share of distributions from the GUC Distribution Pool on the Final Red Apple Claim for all payments made since the Effective Date.

H    This Agreement is entered into as a good faith compromise among the Parties for the complete and final settlement of Claim No. 5 and any further claims, whether known or unknown, that Red Apple may hold against the Debtor, the Debtor's estate, or Swift and for any further claims, whether known or unknown, that Swift, the Debtor's estate or the Creditors Trust may hold against Red Apple. By this Agreement, no Party admits liability to any other Party in any respect or makes any admission as to factual or legal contentions relating to the matters settled herein.

I.    The Parties acknowledge that they have had the opportunity to be represented by counsel

104423-001/2144198_6                              3

during the negotiations of this Agreement and to consult with their respective attorneys regarding its meaning and effect. The Parties agree that: (1) the terms and provisions of this Agreement are not to be construed more strictly against any of the Parties; and (2) it is their mutual intention that the terms and provisions of this Agreement be construed as having the plain meaning of the terms used herein.

J.    This Agreement constitutes the entire agreement among the Parties on the subjects addressed herein. This Agreement is executed without reliance upon any representations by any person or entity concerning the nature, cause, or extent of injuries, or legal liability therefore, or any other representations of any type or nature except as set forth herein. No contrary or supplementary oral agreement shall be admissible in a court to contradict, alter, supplement, or otherwise change the meaning of this Agreement. The Parties also acknowledge the contested and adversarial nature of the dispute regarding Claim No. 5 and stipulate that in executing this Agreement they are not relying on any representations by any other Party or its agents, representatives, or attorneys with regard to the: (1) facts underlying the dispute; (2) the subject matter or effect of this Agreement; and (3) any other facts or issues which might be deemed material to the decision to enter into this Agreement, other than as specifically set forth in this Agreement.

K.    This Agreement may be amended only by written agreement signed by each of the Parties, and any alleged breach of this Agreement may be waived only by a written waiver signed by the Party granting the waiver. This Agreement and any such amendments or waivers of breach may be executed either directly by the Parties, or on their behalf by authorized counsel.

L.    If any term or provision of this Agreement shall be determined to be unenforceable or invalid or illegal in any respect, the unenforceability, invalidity, or illegality shall not affect any other term or provision of this Agreement, but this Agreement shall be construed as if such unenforceable, invalid, or illegal term or provision had never been contained herein.

M.    This Agreement may be executed in any number of counterparts each of which, when executed and delivered, shall be deemed an original and all of which together shall constitute but one and the same agreement. Signatures obtained by facsimile or email in .pdf format shall be deemed to be original signatures.

N.    The Parties shall bear their own respective attorneys' fees and costs relating to the disputes resolved and settled by this Agreement. However, in the event of the commencement of any action or suit by a Party hereto by reason of any breach of the covenants, agreements, or provisions on the part of the other Party arising out of this Agreement, then, in that event, the prevailing Party will be entitled to recover from the other Party all cost and expenses of the action or suit, reasonable attorneys' fees, witness fees, and any other professional fees resulting therefrom.

O.    This Agreement is to be governed by the laws of the State of Arizona. The Bankruptcy Court shall retain exclusive jurisdiction over the interpretation and enforcement of this Agreement, as well as any disputes that may arise between the Parties relating to this Agreement, and the Parties consent to the exclusive jurisdiction of the Bankruptcy Court for these purposes.

P.    Except as expressly stated herein, each Party warrants, represents, and agrees that, except as provided in the Plan, it: (1) has not assigned, subrogated, pledged, or transferred to any person, firm, partnership, corporation, or other entity whatsoever any of the claims, counterclaims, actions, demands, or causes of action to be released pursuant to the releases set forth in this Agreement; and (2) are fully authorized to enter into this Agreement without the consent of any third-parties. The Parties acknowledge that certain Retained Causes of Action (as defined in the Plan) belong to the Creditor Trust pursuant to Section 9.2 of the Plan and cannot

104423-001/2144198_6                                4



be settled by Swift.

Q.	Specifically, each person signing the Agreement represents and warrants that s/he has been authorized and empowered to sign this Agreement on behalf of the Party the person purports to represent and that this Agreement is lawful and binding on the Party on whose behalf the person is signing.

R.	This Agreement will inure to the benefit of and will be binding upon the Parties and their respective heirs, executors, successors, assigns, grantees, administrators, executors, and trustees.

DATED this 24 day of February, 2014.

Swift Air, L.L.C.

By: _____

Its: CEO PRESIDENT

DATED this 21 day of February 2014.

Red Apple Aviation

By: _____

Its: Vice President

104423-001/2144198_6

5