BUCHALTER
A Professional Corporation
Robert J. Miller (SBN: 013334)
Khaled Tarazi (SBN: 032446)
16435 North Scottsdale Road, Suite 440
Scottsdale, Arizona 85254-1754
Telephone: 480-383-1800
Fax: 480-824-9400
Email: rmiller@buchalter.com
          ktarazi@buchalter.com
*Attorneys for the Litigation Trustee*

# IN THE UNITED STATES BANKRUPTCY

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| | Chapter 11 |
| In re: | |
| | Case No. 2:12-bk-14362-DPC |
| SWIFT AIR, L.L.C., | |
| Debtor. | **TRUSTEE'S STATUS REPORT AND MOTION REGARDING: (I) PAYMENT OF TRUST FEES AND COSTS; (II) APPROVAL OF CLAIM REGISTER; AND (III) OTHER RELATED ISSUES** |

This Status Report and Motion ("Motion") is filed by MorrisAnderson & Associates, Ltd., the Litigation Trustee under that certain Creditor Trust Agreement dated October 15, 2013 (the "Trustee" and the "Trust," respectively).[1]  Pursuant to this Motion, the Trustee provides the Court a status report on this case.  The Trustee also seeks the Court's approval of the Trustee's decisions with respect to: (i) the distribution issues discussed below; and (ii) the Trustee's approach to the final claim register used for making distributions to Beneficiaries under the Trust Agreement.

## I.      INTRODUCTION.

In October of 2013, this chapter 11 case was effectively over when the Court confirmed a chapter 11 plan proposed by Swift Air, L.L.C. (the "Debtor").   Since then, the Trustee has been working with its professionals to pursue litigation claims transferred to the Trust under the Debtor's plan.

---

[1]      Unless otherwise defined herein, all capitalized terms will be given the meanings ascribed to such terms under the Swift Air, L.L.C Creditor Trust Agreement dated October 15, 2013 (the "Trust Agreement").

In June of 2014, the Trustee filed the Moyes Lawsuit (defined below) which is the only material asset of the Trust. Seven years later, on July 23, 2021, the Trustee closed a settlement with Jerry Moyes and certain other defendants (collectively, the "Judgment Debtors"). Thus, the Trustee has approximately $1.67 million[2] in cash to administer under the Trust, and should have another $8-9 million in additional cash within the next three years.

The Trustee's goal has been, and continues to be, to perform its duties to generate a return (if possible) for the Beneficiaries under the Trust. Before the Beneficiaries will receive any distributions, the Trustee is required to satisfy all of the fees and costs incurred by the Trustee in prosecuting the Moyes Lawsuit and administration of the Trust – the "Creditor Trust Costs" under the Trust Agreement. Under the Trust Agreement, the Creditor Trust Costs must be paid before Beneficiaries are entitled to receive any distributions from the Trust.

The Trust has Creditor Trust Costs asserted in an aggregate amount of $2.0 million. Once the Court addresses the G&K Application (defined below), the Trustee is prepared to pay $1.63 million in Creditor Trust Costs (deferring a portion of those costs for a year). Beginning on July 23, 2022 and ending on no later than July 23, 2024, the Trustee is entitled to receive another $8-9 million under the Court-approved settlement with the Judgment Debtors. Thus, the Trustee needs and wants to pay the Creditor Trust Costs as provided herein, so the Trustee is one step closer to making distributions to the Beneficiaries of the Trust.

Net of all Creditor Trust Costs and the deferred fees incurred by the Debtor's former estate professionals (who are also Beneficiaries under the Trust), the Trustee believes it will have $4.0-$4.6 million to distribute to the Class 4 general unsecured creditors through the Trust. The Trustee's claim register lists $8.9 million in total Allowed Class 4 claims, so the Trustee believes the Class 4 creditors, over the next few years, will be paid 45-50% of their claims.

## II. PROCEDURAL POSTURE OF CASE; JURISDICTION.

1. On June 27, 2012, the Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. On October 1, 2013, the Court entered the Order Confirming Third

---

[2] Throughout this Motion, the Trustee will use approximate numbers unless the context requires otherwise.

Amended Plan of Reorganization for Swift Air, L.L.C. [DE #662], pursuant to which the Court confirmed the Debtor's Third Amended Plan of Reorganization dated August 21, 2013 (the "Confirmation Order" and the "Plan," respectively). The Plan is Exhibit 1 to the Confirmation Order.

2. The Trust Agreement is Exhibit 2 to the Confirmation Order. The Trust was formed pursuant to the Confirmation Order. MorrisAnderson & Associates, Ltd. was appointed as the Trustee of the Trust under the Confirmation Order. See Confirmation Order, ¶¶32, 33, p.22.

3. In June of 2014, the Trustee commenced a lawsuit in this Court (Adv. Pro. 2:14-ap-000534-DPC) against Jerry Moyes and various other defendants ("Moyes" and the "Moyes Lawsuit," respectively). After years of litigation the Trustee obtained judgments against Moyes and the other Judgment Debtors.

4. On June 28, 2021, the Trustee settled the Moyes Lawsuit pursuant to a Settlement Agreement (the "Settlement Agreement") attached as Exhibit A to the Litigation Trustee's Motion To Approve Settlement Agreement. [DE #977] On July 22, 2021, the Court approved the Settlement Agreement. See Order dated July 22, 2021. [DE #989] Thus, the Settlement Agreement is binding on the Trustee and the Judgment Debtors.

5. On July 23, 2021, the Trustee and the Judgment Debtors closed the transaction which is the cornerstone of the Settlement Agreement. Thus, the Trustee has $1.67 available to distribute in accordance with the terms of the Trust.[3] Moyes is required to pay not less than an additional $2.3 million on the first anniversary of the closing.[4] Moyes is required to pay the Trust

---

[3] This amount is comprised of the initial $1.0 million payment Moyes was required to pay, and did pay, under the Settlement Agreement and another $670,000 the Trustee had garnished from Moyes, which funds are being held in the trust account of Gallagher & Kennedy, P.A. (the "G&K Trust Account Funds" and "G&K," respectively).

[4] Section 3 of the Settlement Agreement provides Moyes with a discounted payoff opportunity. Moyes must make minimum annual payments, on each anniversary of the closing, equal to $2.33 million (first anniversary), $3.33 million (second anniversary), and $3.34 million (third anniversary) – a total of $9.0 million. If Moyes pays the Trust $8.0 million by no later than the first anniversary, however, the Judgment Debtors are deemed to have paid in full all of their obligations under the Settlement Agreement. Assuming the Judgment Debtors are otherwise in compliance with their obligations under the Settlement, but Moyes does not make the $8.0 million payment by the first anniversary, the Judgment Debtors may save $500,000 if Moyes pays the Trust $8.5 million by no later than the second anniversary ($2.33 million by the one-year anniversary and $6.17 million by the second anniversary).

a total of $8-9 million within the next three years (inclusive of the $2.3 million due by the first anniversary).

6.      Under the Trust Agreement, the Trustee has the right (in its sole discretion) to apply to this Court for "instructions or guidance in connection with any issue which may arise in the administration of [the Trust]." Trust Agreement, ¶14.06, p.17. See also 11 U.S.C. §105. The Court has jurisdiction to hear and decide this Motion. See Confirmation Order, ¶¶10.1, 10.1.5, 10.1.6, 10.1.7.

## III.    **DISTRIBUTIONS UNDER THE TRUST**.

7.      Article V of the Trust Agreement establishes the manner and priority of distributions under the Trust. Before Beneficiaries receive distributions from the Trust, the Trustee is required to: (i) first, pay all of the costs and expenses of the Trust; and (ii) second, establish reserves for the payment of the future costs of administering the Trust. These costs and expenses are defined as "Creditor Trust Costs" under the Trust Agreement. Trust Agreement, ¶¶5.01(a)-(b).

8.      There are two categories of Beneficiaries under the Plan: (i) former estate professionals who agreed to defer payment in full of their Professional Fees when the Court confirmed the Plan, which constitute "Allowed Professional Fee Claims" under the Plan; and (ii) Class 4 general unsecured creditors with allowed claims. Id. ¶1.01.

9.      Under the Plan, the Allowed Professional Fee Claims must be paid in full before distributions are made to Class 4 creditors. See Plan at ¶4.4.4. The Allowed Professional Fee Claims total $415,000, and are held by Debtors' counsel (two firms), Committee counsel, and the Trustee. See Plan, ¶2.2. While the Trustee is confident the Allowed Professional Fees total $415,000, the Trustee is having each of these professionals verify the exact amount of fees and no distributions will be made to these firms pending this verification process by the Trustee.

10.     The Trustee is not in a position at this time to make distributions to the Beneficiaries. The Trustee only has sufficient cash to address the Creditor Trust Costs. Pursuant to this Motion, the Trustee establishes a procedure for paying substantially all of the Creditor Trust Costs except

for the Trust's obligation to pay SWAZ[5] its forty percent contingency fee out of future payments by Moyes (discussed below) and ongoing costs of administering the Trust.[6] The Trustee expects to make its first distribution to Beneficiaries shortly after July 23, 2022.

**IV.  CREDITOR TRUST COSTS.**

11.     The Creditor Trust Costs asserted against the Trust total $2.0 million.  The Creditor Trust Costs are the professional fees and reimbursable costs incurred by the Trust.  The majority of those fees and costs are due to the two law firms which served as the Trustee's lead counsel in the Moyes Lawsuit, SWAZ and G&K when it replaced SWAZ.

12.     The following chart summarizes the Creditor Trust Costs and the Trustee's intentions with respect to payment:

| Professional Claims | Time of Payment | Total Claim | Proposed Payment |
| --- | --- | --- | --- |
| G&K Appellate Fees | Pay As Allowed | $278,703.50 | $278,703.50 |
| G&K Non-Appellate Fees | Pay As Allowed | $371,119.50 | $371,119.50 |
| G&K Costs | Pay Upon Agreement | $29,179.00 | $29,179.00 |
| SWAZ Net Fee | Promptly Pay 100% | $85,108.90 | $85,108.90 |
| SWAZ Costs | Promptly Pay 100% | $283,000.00 | $283,000.00 |
| Maerowitz Fees | Promptly Pay 100% | $382,000.00 | $382,000.00 |
| BCLP[7] Fees/Costs | Promptly Pay 35% | $92,254.00 | $ 32,289.00 |
| Buchalter Fees/Costs | Promptly Pay 35% | $237,849.08 | $83,247.00 |
| Trustee Fees/Costs | Promptly Pay 35% | $241,351.00 | $84,473.00 |
| TOTAL: | | $2,012,980.98 | $1,629,199.90 |

13.     The Creditor Trust Costs due to SWAZ and G&K are subject to various disputes and discussed more fully in the next section.  Excluding SWAZ and G&K, the Creditor Trust Costs and the Trustee's plan for paying those costs are fairly simple.

---

[5]     This is SWAZLAW, P.L.C., f/ka/ Schian Walker, P.L.C., who (as explained below) was the Trustee's initial counsel in the Moyes Lawsuit.

[6]     Because the Moyes Lawsuit is over, the Trustee believes the going-forward Creditor Trust Costs should not be significant after the issues addressed in this Motion are consensually resolved or decided by the appropriate court.

[7]     This is Bryan Cave Leighton Paisner LLP.

14. The Maerowitz Firm ("Maerowitz") was SWAZ's co-counsel at trial and continued as co-counsel when G&K replaced SWAZ. The Trustee believes Maerowitz should be promptly paid all of its fees — $382,000.[8]

15. The BCLP and Buchalter situation is straightforward. The Trustee's lead lawyer at BCLP (Bob Miller) moved to Buchalter in January 2021. In August of 2020, BCLP was hired and then Buchalter served as Trustee's counsel on certain specific matters, including supplementing the appellate team in the Moyes Lawsuit, negotiating and documenting the Settlement Agreement, and advising the Trustee on distribution and G&K conflict issues addressed in this Motion.

16. Because the Trust presently does not have sufficient funds to pay all Creditor Trust Costs, BCLP and Buchalter have agreed to accept the prorated payments noted above pending the Trustee receiving sufficient additional cash through the Settlement Agreement to pay their respective fees and costs. The Trustee believes it is necessary and appropriate for BCLP and Buchalter to receive prompt payment of the amounts noted above.

17. Lastly, the Trustee has incurred fees and costs of $241,351. Again, because the Trust presently does not have sufficient funds to pay all of the Creditor Trust Costs, the Trustee has agreed to accept the prorated payment noted above pending the Trustee receiving additional funds under the Settlement Agreement.

18. Because of the results achieved in the Moyes Lawsuit and the years of effort by the Trustee and his professionals, the Trustee is also filing a motion for a fee enhancement on a parallel track with this Motion. However, the Trustee is only asking the Court to approve the fee enhancement for payment as part of the final distributions made to the Beneficiaries.

/ / /

/ / /

---

[8] By letter agreement dated February 9, 2018, Maerowitz served as co-counsel to SWAZ and then G&K. Even though the Debtor's administrative case was closed on November 7, 2015 [DE #943], the Trustee moved for the approval of Maerowitz as co-counsel, which motion was granted by this Court's Order dated March 5, 2018. [DE #957] This Order explicitly states Maerowitz's fees and costs are to be deducted from the contingency fee otherwise due to SWAZ. The Court did not require Maerowitz' fees and costs to be court-approved before payment, which is not unusual when a Trustee retains a professional after plan confirmation.

**V.       PROPOSED PAYMENTS TO G&K AND THE SWAZ RECEIVER.**

19.       SWAZ and G&K each assert a right to recover fees and costs which in the aggregate constitute the majority of the Creditor Trust Costs.  SWAZ was initially hired by the Trustee and was replaced by G&K when Dale Schian, the Trustee's lead trial lawyer, moved to G&K after SWAZ ceased operations.

20.       SWAZ agreed to handle the Moyes Lawsuit for a <u>forty percent</u> contingency fee, plus hourly fees for appellate work (SWAZ performed no appellate work), and cost reimbursement. SWAZ's total contingency fee, assuming the Judgment Debtors fully perform under the Settlement Agreement, will be $3.9 to $4.2 million.[9]

21.       Since September of 2019 (when Mr. Schian joined G&K), G&K has been representing the Trustee.  On July 30, 2021, G&K filed a fee application (the "G&K Application") [DE No. 991], pursuant to which G&K seeks this Court's approval of fees totaling $649,823.00. Out of this amount, G&K is seeking fees of $278,703.50 for appellate work and $371,119.50 for non-appellate work.[10]

22.       G&K has a number of disagreements with the Trustee regarding how the Trustee should disburse funds under the Trust Agreement.  These disputes range from where all settlement proceeds should be held (G&K claims it is entitled to hold the funds) and how much money should be distributed to which claimants.  (These disputes which continue through today are why the Trustee had to retain separate counsel (BCLP) in July of 2020.)  From the Trustee's perspective, these disputes are due to G&K second-guessing the Trustee's decision-making and further caused by Mr. Schian's disputes with his former partners (discussed below).

/ / /

---

[9]       This is the gross contingency fee.  As noted below, this gross amount has to be reduced by both the Maerowitz fees ($382,000) and the G&K non-appellate fees asserted in the amount of $371,119.50.  These reductions are "one time only" adjustments to the SWAZ contingency fee share.

[10]      The Trustee asked G&K to specifically allocate its fees between appellate work and non-appellate work in the G&K Application.  G&K declined to do so.  A cursory review of <u>Exhibit A</u> to the G&K Application, however, establishes that G&K used one file to aggregate its fees for appellate work and then two other files for mostly collection and enforcement work ($352,579.50) and work administering the Trust ($18,540).

23.     Disputes between the Trustee and G&K (and Mr. Schian) first arose in July of 2020, when the Trustee with G&K's assistance successfully garnished $670,000 from Moyes. These funds were wired to G&K's trust account and the firm has been unwilling to release these funds, except on terms acceptable to G&K but objectionable to the Trustee. (These are the G&K Trust Account Funds referenced in Note 3, supra.)

24.     The Trustee believes there would not be any material disputes with G&K except that SWAZ ceased to function as a law firm and Mr. Schian joined G&K in September of 2019. Due to Mr. Schian's transition, the Trustee must consider both SWAZ's retention agreement and the subsequent retention agreement with G&K in evaluating how to address the respective fees and costs due to each law firm.

25.     SWAZ's contract with the Trustee is relatively simple. On December 18, 2013, the Trustee and SWAZ entered into that certain Contract for Legal Services (the "SWAZ Contract"). SWAZ filed a motion on behalf of the Trustee seeking an order from this Court approving the SWAZ Contract, which was granted by the Court. See Order dated December 26, 2013. [DE #799]

26.     Under the SWAZ Contract, SWAZ is entitled to a forty percent share of "whatever is recovered from any claim" against the Judgment Debtors and is entitled to bill hourly for appellate work performed for the Trustee, plus costs. However, SWAZ was subject to an overall fifty percent limit from the recovery in litigation, when the forty percent contingency fee was combined with appellate fees.

27.     When Mr. Schian moved to G&K, the Trustee and G&K entered into a retention agreement. On January 17, 2020, the Trustee executed that certain Consent to Association of Counsel (the "G&K Contract").[11] Pursuant to the G&K Contract, G&K agreed to finish SWAZ's obligations under the SWAZ Contract on an hourly basis with no distinction between appellate and non-appellate work, and agreed to seek compensation "solely" from the fees to be paid to SWAZ under the SWAZ Contract.

---

[11]     Schian signed this document on behalf of SWAZ, when he was a partner at G&K. G&K's signatory was the renowned Phoenix lawyer, now-deceased, Michael Kennedy. Maerowitz is also a party to this agreement.

28.     G&K filed a motion on behalf of the Trustee to approve the G&K Contract, which was granted by this Court's Order dated January 28, 2020. [Moyes Lawsuit DE #554] Unlike the Court's Order approving the SWAZ Contract, the Order approving the G&K Contract requires notice and a hearing, and this Court's approval, of any compensation payable to G&K.

29.     The SWAZ Contract and G&K Contract, especially when considered together, are not a model of clarity especially given subsequent events. SWAZ is entitled to its contingency fee and hourly fees for appellate work performed for the Trustee, but never performed any appellate work. G&K agreed to finish SWAZ's case, but billed on an hourly basis for all work performed. G&K required payment of all work performed on an hourly basis but specifically agreed to receive payment "solely" from the fees due to SWAZ under the SWAZ Contract.

30.     The Trustee resolved these issues in a practical way, by distinguishing between "appellate work" and "non-appellate work" performed by G&K. Because the SWAZ Contract plainly contemplates the Trust being obligated to pay the contingency fee and hourly fees for appellate work, the Trustee's position is that the Trust is obligated to pay G&K for its reasonable fees incurred in performing appellate work but all other work performed by G&K (i.e., non-appellate work) must be paid "solely" from the contingency fee due to SWAZ.

31.     With respect to G&K's non-appellate work, the Trustee's position is the allowed amount of those fees should be paid from funds which would otherwise be paid to SWAZ on its contingency fee. In other words, the Trust has the benefit of an offset against the contingency fee due to SWAZ for non-appellate work performed by G&K, since SWAZ would have only been allowed to bill outside the contingency fee for appellate work and G&K agreed that its sole source of payment would be fees due to SWAZ.[12]

32.     Calculated on the basis of a forty percent contingency, SWAZ would be entitled to recover $670,582.72 from the funds the Trustee presently has available for distribution ($1,676,456.84 times 0.4). SWAZ's contingency share ($670,582.72) plus the hourly fees for

---

[12]     As discussed below, the SWAZ Receiver and Mr. Schian's former partners litigating against him in Arizona Superior Court agree that the Trustee's approach is appropriate. The Trustee also believes that G&K supports this approach.

appellate work incurred by <u>G&K</u> ($278,703.50) equals $949,286.22, which is $111,057.82 more than the fifty percent limit of $838,228.40. (SWAZ has to carry-forward the $111,057.82 to when the Trustee has more settlement proceeds and the fifty percent limit no longer applies.)

33.     Because the fifty percent limit applies now, SWAZ's contingency share is limited to $838,228.40 <u>less</u> the Trust's offset for the G&K non-appellate work ($371,119.50), the latter of which the Trustee will pay once the allowed dollar amount is determined by this Court. Thus, the Trust's contingency share net of the Trust's offset is $467,108.90.

34.     However, the SWAZ contingency share must be further reduced because of the fees due to Maerowitz ($382,000), since Maerowitz's fees are a "deduct" from the SWAZ contingency fee. <u>See</u> Note 8 <u>supra</u>. Just like with G&K and its allowed non-appellate fees, the Maerowitz deduction is a "one-time only" event for SWAZ. The SWAZ share net of the Maerowitz deduction is $85,108.90.[13] Thus, the Trustee believes it is appropriate to transfer SWAZ's net contingency fee of $85,108.90 to the Receiver.

35.     G&K opposes the transfer of these funds to the Receiver for two reasons. G&K contends all of the funds payable on the SWAZ contingency have to be paid to G&K. Alternatively, G&K contends these funds should be held by the Trustee. The Trustee believes this decision is appropriately made by the Trustee — not G&K.

36.     As discussed below, Mr. Schian and his former partners at SWAZ, Cody Jess and Scott Goldberg, are in litigation and SWAZ is in receivership**.** David Reaves is the Receiver. Mr. Schian, on one hand, and the Trustee and the Receiver, on the other hand, have a dispute about SWAZ's costs eligible for distribution by the Trustee.

37.     The Trustee and the Receiver believe it is appropriate for SWAZ to be reimbursed for costs of $283,000, which will allow the Receiver to pay off a loan made to SWAZ by Metro Phoenix Bank (the "Bank"). Mr. Schian contends this exact amount is incorrect and/or the SWAZ

---

[13]     SWAZ's reduction due to the fifty percent limit should be temporary. When the Trust receives more settlement money, the fifty percent limit will no longer apply. With respect to G&K's claim for non-appellate fees, if the Court does not allow the full amount sought by G&K, then the Trustee will owe the difference and will pay that sum to SWAZ.

costs incurred on behalf of the Trustee were not previously paid by funds borrowed from the Bank.

38.     The Trustee and the Receiver believe it is appropriate to distribute $283,000 to the Receiver to fully satisfy the Trust's obligation to reimburse SWAZ for its costs.  Messrs. Jess and Goldberg agree to these terms.  Mr. Schian does not agree to these terms.

39.     In the G&K Application, G&K seeks allowance of fees for non-appellate work totaling $371,119.50.  Subject to the Trustee's right to object to the G&K Application, the Trustee intends on promptly paying G&K's non-appellate fees in the dollar amount as allowed by this Court.[14]

40.     Finally, G&K seeks reimbursement for costs of $29,179.00.  The Trustee asked G&K to include costs in the G&K Application.  G&K declined to do so.  Thus, the Trustee will pay G&K's costs when the Trustee has sufficient information to determine the costs are all appropriate to be paid and how these costs are allocated between appellate and non-appellate work.

## VI.     THE SWAZ LAWSUIT AND RELATED ISSUES.

41.     Mr. Schian and two of his former partners (Messrs. Jess and Goldberg) are in litigation regarding SWAZ.  For approximately a year, the Trustee had lingering disputes with G&K regarding the issues discussed in this Motion, but the Trustee needed to make sure those disputes did not have a material adverse effect on the negotiations with Moyes and the other Judgment Debtors.  Since the Trustee has a binding and final settlement with the Judgment Debtors, the Trustee has the ability to directly address these issues.

42.     On January 29, 2020, Mr. Schian sued Messrs. Jess and Goldberg (and their respective spouses) in Superior Court of Arizona, Maricopa County (CV-2020-001402).  On June 7, 2020, Messrs. Jess and Goldberg countersued Mr. Schian and his spouse (CV-2020-001871).  The Hon. Danielle Viola presides over both lawsuits which are now consolidated into Case No. CV2020-001402 (the "SWAZ Lawsuit").  On February 13, 2020, Messrs. Jess and Goldberg filed

---

[14]     In the Proposed Order discussed below, the Trustee agreed to turn over the estimated amount of G&K's non-appellate fees to the Receiver.  As a practical matter, since the Trustee has the funds, the Trustee is proposing herein that the Trustee simply offset the amount sought by G&K ($371,119.50) so the Receiver holds SWAZ's net contingency fee share.  See Paragraphs 32-34 above.  The Receiver concurs in this approach.

an application to appoint a receiver which resulted in the appointment of David Reaves as Receiver.

43.     The Trustee executed the G&K Contract on January 17, 2020.  G&K entered into another contract around this time.  G&K entered into that certain Agreement of Counsel with SWAZ, which the Trustee and the Receiver refer to as the "Cross-Collateralization Agreement." While a partner at G&K, Mr. Schian purported to execute the Cross-Collateralization Agreement on behalf of SWAZ on January 10, 2020.

44.     The Trustee is not a party to the Cross-Collateralization Agreement.  This Court approved the Cross-Collateralization Agreement in a different case.  Tim Shaffer is the trustee in the Potential Dynamix, LLC chapter 11 case, pending as Case No. 2-11-bk-28944-DPC (the "Dynamix Case").  In the Dynamix Case, Mr. Shaffer retained SWAZ on a contingency fee basis to pursue claims against Amazon Services, LLC in Adversary Proceeding No. 13-ap-00799 (the "Amazon Lawsuit").

45.     In January 2020, G&K filed an application on behalf of Mr. Shaffer, in his capacity as trustee,[15] asking this Court to approve G&K's replacement of SWAZ in the Amazon Lawsuit. The Cross-Collateralization Agreement directly addresses the Moyes Lawsuit and appears designed to ensure G&K is paid its hourly rates for work performed on both the Moyes Lawsuit and the Amazon Lawsuit, before SWAZ receives payment for its work in either case.  See also Schaffer Application, ¶5, p.2.

46.     For months, the Receiver and the Trustee have had a running dialogue regarding these two cases, primarily focused on the various retention agreements discussed herein. Early on in those discussions, the Trustee and Receiver agreed that the SWAZ costs of $283,000 (owed in turn to the Bank) needed to be paid and the only funds available were the G&K Trust Account Funds.  G&K refused to allow the funds to be used in this manner, without additional conditions unacceptable to the Trustee and the Receiver.

47.     On April 26, 2021, Messrs. Jess and Goldberg filed a Motion to Amend the receivership order previously entered by Judge Viola in the SWAZ Lawsuit.  Briefing on the

---

[15]     Mr. Shaffer's application [Amazon Lawsuit DE No. 579] makes an attempt to protect G&K's interests under Section 328(a) of the Bankruptcy Code.

Case 2:12-bk-14362-DPC    Doc 994    Filed 08/09/21    Entered 08/09/21 11:23:50    Desc
BN 46372434v5
                                    Main Document    Page 12 of 21

Motion to Amend has been extensive. As the briefing evolved, the Trustee was brought into the discussion by the Receiver because the G&K Trust Account Funds and the other recoveries due under the Settlement Agreement had become "live issues" in the SWAZ Lawsuit.

48. Rather than litigate regarding these issues, the Trustee collaborated with the Receiver, Mr. Jess, Mr. Goldberg, Mr. Schian, and G&K to work out a resolution. After extensive negotiations, only G&K and Mr. Schian opposes the resolution reached by the parties. On July 23, 2021, the Receiver submitted the proposed <u>Order Regarding Motion To Amend Receivership Order</u> (the "Proposed Order"),[16] attached hereto as <u>Exhibit A</u>. The Proposed Order is agreed to by all parties except Mr. Schian and G&K. The Superior Court has not yet ruled on the Motion to Amend.

49. The Proposed Order addresses four issues crucial to the Trustee. The Proposed Order makes it clear: (i) the Trust is not responsible for paying G&K's non-appellate fees from any source <u>other</u> <u>than</u> SWAZ's contingency fee share (¶21); (ii) G&K must file a fee application, so this Court may decide the dollar amount of its hourly fee award and allocate same between appellate and non-appellate fees (¶23); (iii) G&K's allowed appellate fees are an obligation of the Trust, not SWAZ (¶24); and (iv) G&K is directed to turn over to the Trustee the G&K Trust Account Funds less the appellate fees claimed by G&K (¶28).

50. Because the Motion to Amend is not resolved and there are other issues of importance which may transpire in the SWAZ Lawsuit (<u>e.g.</u>, judicial rulings on the interpretation and enforceability of the various agreements addressed herein), on July 28, 2021, the Trustee filed a <u>Motion to Intervene</u> in the SWAZ Lawsuit. The Receiver, Mr. Jess, and Mr. Goldberg stipulated to the limited intervention by the Trustee. Mr. Schian has refused to consent, so the intervention motion remains pending before Judge Viola.

/ / /

/ / /

---

[16] The only material difference between the Proposed Order and what the Trustee proposes herein is: (i) the Proposed Order worked off of fee and cost estimates provided by G&K and this Motion uses the actual numbers, for example, in the G&K Application; and (ii) the Trustee proposes herein to "net out" the SWAZ contingency fee share for the G&K non-appellate fees, rather than having the Receiver hold those funds with the direct obligation to pay the G&K non-appellate fees as allowed by this Court. <u>See</u> Paragraphs 32-34 and Note 14, <u>supra</u>.

## VII. SUMMARY & FUTURE DISTRIBUTIONS.

51.     In summary, the Trustee has $2.0 million in Creditor Trust Costs which (subject to allowance in the instance of G&K) must be paid or reserved before any distributions may be made to the Beneficiaries under the Trust.  The Trustee has $1.67 million available to pay the Creditor Trust Costs.

52.     The Trustee believes it is appropriate to pay in full (or reserve pending allowance) the fees and costs of G&K, SWAZ, and Maerowitz as set forth in Paragraph 12 above – a total of approximately $1,430,000.   Upon receipt of these payments, these professionals would be "out of the case" except for SWAZ's right to its forty percent contingency from future payments made under the Settlement Agreement.

53.     The Trustee, joined by BCLP and Buchalter, have agreed to take partial payments at this stage, leaving their remaining balances for payment when the Trust receives additional funds under the Settlement Agreement.  For now, the Trustee proposes that they will share approximately $200,000 – thirty-five percent of what they are currently owed by the Trust.

54.     Assuming Moyes only makes the next minimum payment required under the Settlement Agreement (rather than paying $8.0 million to obtain the benefit of the one-year discounted payoff), the Trustee will receive another $2.3 million in July 2022.  These funds will be used to pay the Trustee, BCLP, and Buchalter current on all fees and costs, including the existing balance being "carried" with their consent.  SWAZ or the Receiver, if SWAZ is still in receivership, will be paid its forty percent contingency ($920,000).  After making these payments the Trust will have $963,000, which will be used to satisfy the Allowed Professional Fee Claims ($415,000), with the remainder available to distribute to holders of Allowed Class 4 claims or held (at the Trustee's discretion) pending receipt of further cash under the Settlement Agreement.

55.     Assuming Moyes does not exercise either of the discounted payoff options, Moyes will be required to make a second minimum payment of $3.3 million on or before July 23, 2023.  At that time, the Trustee will be in a position to distribute this cash (net of the SWAZ contingency) to holders of Allowed Class 4 claims.   Final distributions will be made either shortly after Moyes exercises one of the discounted payoff options and, absent that, when Moyes makes the final

payment due on the third anniversary ($3.4 million).

56.     When the "smoke clears," and if the Judgment Debtors perform under the Settlement Agreement, the Trust will have received either $9.67 million or $10.67 million through the Settlement Agreement.  SWAZ will have received forty percent of that amount ($3.87 million or $4.27 million) less the Maerowitz fees and the G&K non-appellate fees as allowed by the Court.

57.     This means the Trust's recovery net of all Creditor Trust Costs, except for future fees and costs incurred by the Trust, will be between $4,453,000 and $5,053,000.  With the final netting out adjustment of $415,000 to satisfy the Allowed Professional Fee Claims, the Allowed Class 4 creditors should share $4.0 to $4.6 million on a pro rata basis.  The Trustee's Proposed Claim Register (discussed below) reflects total Allowed Class 4 claims of $8.9 million, which means they eventually should receive approximately 45-50% in distributions from the Trust.

## VIII.   CLAIM REGISTER ISSUES.

58.     As noted above, the Beneficiaries of the Trust are the former estate professionals with Allowed Professional Fee Claims and general unsecured creditors with Allowed Class 4 claims.  The Trustee anticipates no issues in receiving confirmation from the former estate professionals regarding their respective Allowed Professional Fee Claims which (in aggregate) total $415,000.

59.     Because of the manner in which the claim resolution process was allocated under the Plan, however, the Trustee believes it is appropriate to have this Court approve the process set forth herein to verify the creditors holding Allowed Class 4 claims.  Under the Plan, the Reorganized Debtor was tasked with handling the claim resolution process.  See Plan, ¶12.1.

60.     Early in its tenure, the Trustee received a claim register from the Reorganized Debtor.  The Trustee has generally maintained that claim register through the years, while the Reorganized Debtor made distributions for two years under Section 4.4 of the Plan.[17]

61.     Exhibit B attached hereto is the claim register maintained by the Trustee (the "Proposed Claim Register").  The Trustee believes the Proposed Claim Register does not contain

---

[17]     Class 4 creditors with Allowed Claims received a prorated share of the "GUC Distribution Pool" over a two-year period – a $600,000 pool of funds.  Plan, ¶¶1.1.44, 4.4.

errors which would materially affect a Class 4 creditor. Out of an abundance of caution, however, the Trustee believes it is appropriate to send out the Proposed Claim Register on a "negative notice" basis, so all Class 4 creditors have a final opportunity to review and consider the Proposed Claim Register and the amount of their respective claims set forth thereon.

62.     The Trustee is recommending this procedure due to the many years which have passed since the Reorganized Debtor completed the claim resolution process. Many creditors may have either lost track of their claims and/or may have changed addresses. While Class 4 creditors are required to notify the Trustee upon a change of address (Plan, ¶3.03), it is distinctly possible the Trustee no longer has the ability to find all of the claimants.

63.     The Trustee has maintained a mailing list for Class 4 claimants and has supplemented the list through the years. The Trustee intends on noticing the Proposed Claim Register to this master mailing list in order to finalize the Proposed Claim Register.

64.     The Trustee does not believe it is necessary for this Court to reopen the claim allowance process, since the Plan already provided for that process. The Trustee requests authorization to pay on a pro rata basis when appropriate under the Trust: (i) based on the amounts scheduled on the Proposed Claim Register to the Class 4 claimant; or (ii) based on the amounts scheduled on the Proposed Claim Register, with the Trustee having the discretion to increase the allowed amount to any claimant by not more than $100,000, if a claimant provides proof of an allowed claim entitled to such additional amount.

65.     By utilizing the above-referenced procedure, the Trustee believes a final claim register will be established. Then, the Trustee will be able to make future distributions to creditors holding Allowed Class 4 claims and the Court may close this case (again) after resolving the other issues addressed in this Motion.

## IX.     DISCUSSION RE: REQUESTED RELIEF.

The Trustee moved to reopen this case for two reasons. First, the Trustee believed the settlement with Moyes and the other Judgment Debtors was a significant enough event in this case to warrant approval under Bankruptcy Rule 9019. This Motion is the second reason.

/ / /

1    While the Trustee does not believe this case needs to remain open for more than a couple

2    of months, this Motion provides the Court with a status update which (hopefully) is helpful to the

3    other parties in interest.

4    The Trustee has been concerned for many months that the issues involving the SWAZ

5    Lawsuit could interfere with the administration of the Trust. The Trustee's concerns were

6    legitimate. If the Court grants the limited relief requested herein and promptly issues a ruling on

7    the G&K Application, then the Trustee believes the case may be promptly closed again.

8    However, the Trustee has had disputes with Mr. Schian and G&K which have been

9    outstanding for months. The Trustee on behalf of the Trust has incurred <u>substantial</u> fees attempting

10   to resolve those issues. Undeniably, SWAZ has a large economic stake in this case. So does Mr.

11   Schian and G&K. While the Trustee has been able to resolve basically all outstanding issues with

12   the Receiver (who has a fiduciary duty to act on behalf of SWAZ), Mr. Jess, and Mr. Goldberg, the

13   Trustee has had to take action in the SWAZ Lawsuit to protect the Trust, and the only resistance

14   has come from Trustee's longstanding counsel – Mr. Schian and G&K.

15   There are jurisdictional issues at play between this chapter 11 case and the SWAZ Lawsuit.

16   The Trustee has asked Judge Viola to defer to this Court on the G&K Application and how those

17   fees, as allowed, are allocated between the Trust and the SWAZ receivership estate. The Trustee

18   specifically requests that relief from this Court.[18] G&K's fees are the only fees before the Court

19   that specifically require approval by this Court.

20   The Trustee respectfully submits that Mr. Schian and G&K have failed to abide by decisions

21   made by the Trustee, their client, to the level of interference with the administration of the Trust.

22   Before the Moyes Lawsuit settled, the Trustee had to take a more measured approach to dealing

23   with these disputes. That is no longer the case. After months of discussions, including significant

24   efforts as late as last week, the Trustee has had to resort to the filing of this Motion.

25   / / /

26   _____

27   [18]     Given the relief sought through this Motion and the Proposed Order lodged with Judge Viola, it is possible
     there will be overlapping rulings by this Court and Judge Viola. Rather than try to "steer" this Motion through those
     cross-jurisdictional issues, the Trustee is making a similar request to both courts and leaves it to the good judgment of
28   the Judges to make decisions as each Judge deems appropriate within their respective jurisdictional boundaries.

The Trustee has sole decision-making authority under the Trust and all of its decisions are well within the Trustee's discretion. The Trustee cannot and will not allow G&K to hold millions of dollars of litigation recoveries. The Trustee requests an order confirming the Trust will not be exposed to any claims under the Cross-Collateralization Agreement. The Trustee and the SWAZ receivership estate are both entitled to know a court has approved the turnover of the SWAZ net share of the contingency fee, to be held by the Receiver pending further order by the presiding Judge in the SWAZ Lawsuit (Judge Viola).

Under the jurisdiction reserved in the Plan and the Trust Agreement, this Court has the power to enter an order providing for the relief requested below. Promptly granting this relief will significantly aid the Trustee in performing its duties. It will allow the Trustee to pay a majority of the Creditor Trust Costs which will have the Trustee closer to making distributions to Class 4 creditors (and the former estate professionals).

With regard to notice, the Trustee believes that this Motion does <u>not</u> need to be noticed to the entire master mailing list. Rather, the Trustee will notice this Motion and the Court's hearing thereon to the parties entitled to notice under the Confirmation Order, although the Trustee has also provided a copy of this Motion to the various parties asserting Creditor Trust Costs. After the Court rules on this Motion, the Trustee intends to serve a notice regarding the Proposed Claim Register on all of the Class 4 creditors. At that time, the Trustee will also provide the Beneficiaries under the Trust with a status report.

**X.      <u>CONCLUSION.</u>**

Based on the foregoing, the Trustee respectfully requests that the Court enter an Order:

**A.**     Granting the Motion;

**B.**     Confirming the Trustee, and only the Trustee, is the entity designated to hold all funds in which the Trust has an interest, including (without limitation) all recoveries from the Moyes Lawsuit, subject only to G&K retaining funds in the amount of its asserted appellate fees pending entry of an order from this Court deciding the allowed dollar amount owed to G&K;

**C.**     Confirming the Trust has no liability under the Cross-Collateralization Agreement;

**D.**     Confirming the Trustee is authorized (at its discretion) to proceed with the proposed

1  payment plan set forth above;

2       **E.**     Confirming the Trustee is authorized to finalize the Proposed Claim Register in the

3  manner set forth above; and

4       **F.**     Granting such other and further relief as this Court deems fair and just.

5  DATED: August 9, 2021

6                              BUCHALTER
                            A Professional Corporation

7

8

                  By:       *s/RJM (SBN: 013334)*

9                              Robert J. Miller
                            Khaled Tarazi

10                              16435 North Scottsdale Road, Suite 440
                            Scottsdale, Arizona 85254-1754

11                              *Attorneys for the Litigation Trustee*

12

13  **E-FILED** on August 9, 2021 with the

14  U.S. Bankruptcy Court and copies served
via ECF notice on all parties that have

15  appeared in the case.

16  **COPY** e-mailed or sent U.S. Mail
the same date to:

17

18  Swift Air, L.L.C.
Attn: Chief Executive Officer

19  2406 South 24th Street, Suite E-101
Phoenix, Arizona 85034

20

21  Riemer & Braunstein, LLP
Attn: Steven E. Fox, Esq.

22  Times Square Tower
Seven Times Square, #2506

23  New York, New York 10036
sfox@riemerlaw.com

24  *Attorneys for Debtor*

25  Michael W. Carmel, Esq.

26  Michael W. Carmel, Ltd.
80 East Columbus Avenue

27  Phoenix, Arizona 85012-4965
michael@mcarmellaw.com

28  *Attorney for Debtor*

19

Gerald M. Gordon, Esq.
Teresa M. Pilatowicz, Esq.
Garman Turner Gordon
650 White Drive, #100
Las Vegas, Nevada 89119
ggordon@gtg.legal
tpilatowicz@gtg.legal
*Attorneys' for Reorganized Debtor*

Dale C. Schian
Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:  (602) 530-8000
dale.schian@gknet.com
*Attorneys for the Litigation Trustee*

Kim Maerowitz
The Maerowitz Law Firm
4001 E. Mountain Sky Avenue, #107
Phoenix, Arizona 85044
kmaerowitz@maerowitzlaw.com
*Co-counsel for the Litigation Trustee*

Brian C. Walsh
Bryan Cave Leighton Paisner, LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102
brian.walsh@bclplaw.com

Jennifer Giaimo
Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ  85003
jennifer.a.giaimo@usdoj.gov
*Counsel for Office of the United States Trustee*

Ryan W. Anderson, Esq.
Guttilla Murphy Anderson, P.C.
5415 East High Street, Suite 200
Phoenix, Arizona 85054
randerson@gamlaw.com
*Attorneys for David Reaves
Receiver over SWAZLAW, PLC*

Keith L. Hendricks
Moyes Sellers & Hendricks
1850 North Central Avenue, Suite 1100
Phoenix, AZ  85004
khendricks@law.msh.com
*Attorneys for Cody Jess and Scott Goldberg*

*/s/ Cristina Daniels*